UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY BASEHART GAETANO,
ET AL.,

           Petitioner,                    No. 19-51772

v.                                 District Judge Paul D. Borman
                                 Magistrate Judge R. Steven Whalen

UNITED STATES OF AMERICA,

           Respondent.

_____/

## REPORT AND RECOMMENDATION

On December 9, 2019, Petitioner's filed a Petition to Quash Summons [ECF No. 1], challenging third-party summonses served by the Internal Revenue Service ("IRS") on nine financial institutions where Petitioners hold accounts.[1] Before the Court is Respondent's Motion to Dismiss and Enforce Summons [ECF No. 6], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).  For the reasons discussed below, I recommend that Respondent's motion be GRANTED, that the Petition to Quash Summons be DISMISSED, and that the Court order enforcement of the IRS summonses.

### I.   FACTS

The summonses in question are related to an IRS investigation of Petitioners Kimberly Baseheart-Gaetano and Richard Gaetano for possible criminal tax liabilities. Agent Tyler Goodnight of the IRS Criminal Investigation Division has submitted a

---

[1] The IRS summonses were served on U.S. Bank, NA; Key Bank; Fifth Third Bank; Wells Fargo Bank, NA; JP Morgan Chase Bank; Bank of America, NA; Comerica Bank; Paypal; and Michigan First Credit Union.

Declaration in support of this motion. *Goodnight Declaration*, ECF No. 6-1, PageID.98-100.  Agent Goodnight states that he is conducting a criminal investigation "to determine whether Kimberly Basehart-Gaetano and/or Richard Gaetano understated their tax liability for tax years 2015 through 2018, and quarterly filings for 2019, in violation of the Internal Revenue Code." *Id.*, PageID.98, ¶ 3.  He states that he issued the summonses seeking documents for the period January 1, 2015 through November 1, 2019.  *Id*. ¶ 4.  This request is not concurrent with the end of a tax year, he says, because he is also investigating quarterly filings, "and records beyond the close of the tax periods under investigation may shed light on the accuracy of income reported in the prior tax year." He further states that "[t]he records are relevant and necessary to my investigation of whether the Gaetano a tax liability." *Id*. ¶¶ 5-6.  Goodnight states that he followed all of the procedural steps required under 26 U.S.C. § 7603, that no Justice Department referral, as defined by 26 U.S.C. § 7602(d)(2) is in effect with respect to the Petitioners, and that the documents described in the summonses were not already in the possession of the IRS.  *Id*. ¶¶ 8-10.

In their Petition, Petitioners seek to quash the summonses on the basis that they were issued in bad faith. First, they argue that there is no tax period ending November 1, 2019. They further argue that although the IRS claims it is conducting a criminal investigation, it is in reality "conducting a civil investigation to obtain information for a jeopardy assessment." ECF No. 1, PageID.2-3.

## II.   DISCUSSION

The IRS issued these summonses pursuant to 26 U.S.C. § 7602, which provides, in pertinent part:

> "For the purpose of ascertaining the correctness of any return,  making a
> return where none has been made, determining the liability of any person

for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized- - -

"(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry."

In *United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984), the Court found that "the very language of § 7602 reflects...a congressional policy choice in favor of disclosure of all information relevant to a legitimate IRS inquiry."

§ 7602 identifies four separate investigatory purposes which would support the issuance of an administrative summons: (1) to determine the correctness of any return, (2) making a return where none was made, (3) determining a person's liability "for any internal revenue tax," and (4) collecting such liability. In addition, the information sought must be "relevant or material" to one of these investigatory purposes.

The concept of relevance, as that term is used in § 7602, is extremely broad. To justify a summons under that section, the government is not held to a standard of probable cause, *United States v. Powell*, 379 U.S. 48, 57 (1964), nor to the relevancy standard used in deciding whether to admit evidence under Fed. Rule Evid. 401. *United States v. Arthur Young & Co.*, 465 U.S. at 814.[2] Courts have consistently held that § 7602 "endows the IRS with expansive information-gathering authority." *United States v. Ritchie*, 15 F.3d

---

[2] In *Arthur Young*, the Supreme Court noted:

"The language 'may be' reflects Congress' express intention to allow the IRS to obtain items of even *potential* relevance to an ongoing investigation, without reference to its admissibility. The purpose of Congress is obvious: the Service can hardly be expected to know whether such data will in fact be relevant until it is procured and scrutinized. As a tool of discovery, the § 7602 summons is critical to the investigative and enforcement functions of the IRS...[T]he Service therefore should not be required to establish that the documents it seeks are actually relevant in any technical evidentiary sense." *Id.* (Emphasis in original)(internal citations omitted).

592, 596 (6th Cir. 1994).  The generally accepted standard is whether the inspection

"might shed light on the accuracy of the taxpayer's returns."  *United States v. Davey*, 543

F.2d 996, 1000 (2nd Cir. 1976).

In *United States v. Powell*, 379 U.S. at 57-58, the Supreme Court held that a prima

facie case for enforcement of a § 7602 summons is established if the government shows

(1) the investigation has a legitimate purpose; (2) the summoned materials are relevant to

that investigation; (3) the information sought is not already within the IRS's possession;

and (4) the IRS has followed the procedural steps outlined in 26 U.S.C. § 7603.  Once the

government makes that showing, the burden shifts to the taxpayer to show that

enforcement of the summons would be an abuse of the court's process.  *United States v.

Will*, 671 F.2d 963, 966 (6th Cir. 1982).  The taxpayer can rebut the government's prima

facie case by refuting one of the *Powell* factors,  *Mazurek v. United States*, 271 F.3d 226,

230-31 (5th Cir. 2001), or by showing that "the summons had been issued for an improper

purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral

dispute, or for any other purpose reflecting on the good faith of the particular

investigation."  *Powell*, 379 U.S. at 58. Furthermore, an administrative summons "will be

deemed unreasonable and unenforceable if it is overbroad and disproportionate to the end

sought."  *United States v. Theodore*, 479 F.2d 749, 754 (4th Cir. 1973).

Typically, the government makes its prima facie showing through submission of an

affidavit of the investigating agent who issued the summons.  *United States v. Will*, 671

F.2d at 966.  In the present case, IRS Agent Goodnight has submitted a declaration stating

that the purpose of the summonses is "to determine whether [Petitioners] understated their

tax liability for tax years 2015 through 2018, and quarterly filings for 2019, in violation of

the Internal Revenue Code." ECF No. 6-1, PageID.98, ¶ 3.  This is a legitimate

investigatory purpose, and the financial information sought is relevant to his inquiry.
Agent Goodnight also attests that the IRS does not have possession of the material, and
that he has followed the procedural steps of § 7603.

I find that the Respondent has met its burden of establishing a prima facie case for
the enforcement of its summonses under *Powell*, and that the burden of showing that they
are unenforceable now falls upon the Petitioners. "This burden is a heavy one." *Kondik v.
United States*, 81 F.3d 655, 656 (6ᵗʰ Cir. 1996).

First, I note that in a previous case involving this same investigation of the
Petitioners, the Court has already ruled that a similar summons issued to a third-party was
issued for a proper purpose, and that Agent Goodnight's declaration established a prima
facie case. *Gaetano, et al. v. United States*, E.D. Mich. No. 19-51563, ECF No. 16,
PageID. 117-121, adopting in part Magistrate Judges' Order, ECF No. 11.  Specifically,
Judge Battani in that case rejected the very arguments that Petitioners raise in the present
case: that the government's bad faith is shown by requesting documents from an "odd tax
period" (in that case, ending September 1, 2019, and in this case ending November 1,
2019), and that the true purpose of the investigation was for civil, not criminal
enforcement proceedings.[3] Judge Battani found as follows:

> "Petitioners cite no authority for the proposition that such rank speculation
> as to disguised motives for issuing a summons may suffice to defeat the
> application of the § 7609( c )(2)(E) exception to notice. The evidence put
> forward by Respondent shows that each of these [statutory] requirements
> has been satisfied, and Petitioners have not identified a basis for the Court
> to authorize an inquiry into the 'true' purpose of the investigation identified
> by Special Agent Goodnight...." E.D. Mich. No. 19-51563, ECF No. 16,
> PageID. 119-120.

---

[3] Petitioners argued that the request for documents from an "odd tax period" is
evidence that the government's intent was to pursue a civil tax investigation while
avoiding the notice that ordinarily would be required. *Gaetano*, No. 19-51563, ECF No.
16, PageID.119.

Judge Battani also accepted my conclusion that the Petitioners had failed to support their speculative conclusion regarding the "true purpose" of the investigation:

> "The Magistrate Judge determined, and this Court agrees, that Petitioners have failed to produce 'sufficiently plausible information to support' their bare assertion that the summons served on Portal 42 was not issued in connection with a criminal investigation, but instead was intended to advance a civil investigation while avoiding the required notice to Petitioners." *Id*. PageID.120.

A petitioner seeking to quash an IRS summons "must set forth specific facts and evidence to support" a claim of bad faith, and cannot rely on "conclusory allegations." *Cypress Funds, Inc. v. United States*, 234 F.3d 1267, 2000 WL 1597833 (6th Cir. 2000)(unpublished)(internal punctuation and citation omitted).  These Petitioner failed to meet their heavy burden of showing the government's bad faith in Judge Battani's case, and they have failed to meet that burden in the present case.

Finally, in their response, Petitioners appear to argue that bad faith of is shown by the fact the the IRS filed a Notice of Intent to Seize Property unless some $843,000 is paid, where other evidence shows that no money is owed. *Response*, ECF No. 9, PageID.151.  However, the Petitioners cannot "use the proceedings to enforce the IRS summons as a forum in which to contest the validity of the underlying assessments." *United States v. Mueller*, 930 F.2d 10, 12 (8th Cir. 1991).  And as the Respondent points out, there is a separate mechanism for Petitioners to challenge any tax assessment under 26 U.S.C. ¶¶ 6213, 7422. *Respondent's Reply*, ECF No. 11, PageID.162, citing *United States v. Gardell*, 23 F.3d 395, (1st Cir. 1994)(no due process violation in enforcing summons when the taxpayer could challenge the assessment or payment of the tax in other proceedings).[4]

---

[4] For the same reasons, Petitioners' motion for evidentiary hearing and discovery [ECF No. 5] will be denied by separate order.

For these reasons, Respondent's motion to dismiss [ECF No. 6] should be granted.

### III.    CONCLUSION

I recommend that Respondent's Motion to Dismiss and Enforce Summons [ECF No. 6] be GRANTED, and that the Petition to Quash [ECF No. 1] be DISMISSED.

Any objections to this Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE

Dated:  August 13, 2020

CERTIFICATE OF SERVICE

       I hereby certify that a copy of the foregoing document was sent to parties of record on August 13, 2020 electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager
